UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DONALD GIBSON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:16-CV-2997-BK |
| § | |
| NANCY BERRYHILL, § | |
| Acting Commissioner of Social § | |
| Security, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

The parties have consented to proceed before the magistrate judge. Doc. 20. Now before the Court are the parties' cross-motions for summary judgment.[1] Doc. 32; Doc. 33. As detailed herein, Plaintiff's *Motion for Summary Judgment* is **DENIED**, Defendant's *Motion for Summary Judgment* is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

### I.   BACKGROUND

####   A.   Procedural History

Plaintiff seeks judicial review of a final decision by the Commissioner denying his claim for supplemental security income ("SSI") under the Social Security Act ("the Act"). Plaintiff filed for benefits in May 2013, claiming that he became disabled in June 2012 due to bipolar disorder, anxiety, paranoia, and insomnia.[2] Doc. 19-6 at 2-10. Plaintiff's application was denied

---

[1] Because Plaintiff failed to comply with the Court's directive to file a motion for summary judgment, Doc. 2, and in the interest of expediency, the Court construes his *Plaintiff's Brief*, Doc. 32, as a summary judgment motion.

[2] The earliest month for which the Social Security Administration may make SSI payments is the month following the month in which the claimant filed his application. 20 C.F.R. § 416.335. Thus, the relevant period in this case began in May 2013, when Plaintiff filed his SSI

at all administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. § 405(g).
Doc. 19-3 at 12-14; Doc. 19-3 at 24-33; Doc. 19-4 at 2, 13; Doc. 19-5 at 3.

B. **Factual Background**

Plaintiff was born on January 31, 1965, and was 50 years old on the date of the Administrative Law Judge's (ALJ's) decision. Doc. 19-6 at 2. He had a high school education, a year of college attendance, and past work experience as a car detailer, floor cleaner, and cook. Doc. 19-3 at 44, 48, 54; Doc. 19-10 at 34.

In terms of his medical history, Plaintiff was prescribed medication for anxiety and depression in 2011, when he reported being depressed and frustrated with his homeless status and the passing of two family members. Doc. 19-10 at 8. His affect was slightly depressed throughout that year, but his thought content was normal, he was employed, and he was "motivated for treatment." Doc. 19-10 at 9-12. In August 2011, Plaintiff stated that his medications were working. Doc. 19-10 at 9. In October 2012, he was diagnosed with bipolar disorder and anxiety for which he also was prescribed medication. Doc. 19-8 at 4-5.

In June 2013, Plaintiff reported that he had been working as a cook at the same restaurant for about six months, and previously was a cook at a different restaurant for nearly a year. Doc. 19-10 at 34. He stated that, at that time, he had only mild difficulty engaging in activities of daily living. Doc. 19-10 at 34. During mental health evaluations from July through September 2013, Dr. Kathleen Sheehan, M.D., noted that Plaintiff was well-groomed, friendly, and relaxed,

---

application. Doc. 19-3 at 24. Regardless of the filing date of the application, however, the administrative law judge ("ALJ") considered Plaintiff's complete medical history in accordance with 20 C.F.R. § 416.912(b) (stating in relevant part that "Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application."). Doc. 19-3 at 24.

his attention and concentration were intact, and his thought process was well-organized. Doc. 19-10 at 17-18; Doc. 19-10 at 43-44; Doc. 19-11 at 45-46. During his July 2013 appointment, Plaintiff reported that he had been a "C" and "D" student in high school and had attended college for one year, but was told he "wasn't applying himself" and dropped out. Doc. 19-10 at 18. Dr. Sheehan estimated during that examination that Plaintiff has below-average intellectual functioning. Doc. 19-10 at 17-18. Plaintiff was continued on psychiatric medication for bipolar disorder with psychotic features throughout this time frame. Doc. 19-10 at 47; Doc. 19-11 at 45.

In August 2013, Plaintiff went to the emergency room for a persistent cough and informed the doctor that he was keeping up with his psychiatric medications and having no issues. Doc. 19-11 at 17. The doctor noted that Plaintiff was experiencing no hallucinations or delusions, his affect and thought content were normal, and his judgment and insight were appropriate. Doc. 19-11 at 18. In October 2014, Plaintiff reported to the emergency room because he ran out of his medication. Doc. 19-12 at 11. Dr. Carolyn Morrow, M.D. noted that his behavior was normal, his thought process was clear, logical, and future-oriented, his thought content was appropriate, and he was calm and cooperative. Doc. 19-12 at 14. Dr. Morrow diagnosed Plaintiff with depression and post-traumatic stress disorder and restarted him on his previous medications, which Plaintiff "felt were helpful to him." Doc. 19-12 at 11.

Two state agency psychologists opined that Plaintiff could (1) understand, remember, and carry out simple instructions; (2) make simple decisions; (3) attend and concentrate for extended periods; (5) interact adequately with co-workers and supervisors; and (6) respond appropriately to changes in a routine work setting. Doc. 19-4 at 10; Doc. 19-4 at 24.

3

C.     The ALJ's Findings

In April 2015, the ALJ determined that Plaintiff had the severe impairments of bipolar disorder, history of cocaine dependence, and degenerative disc disease of the lumbar spine. Doc. 19-3 at 26. The ALJ found that Plaintiff's claim that he had low intelligence was "not medically determinable" because there was no documentation such as school records or other testing to support the allegation, and his mental health provider's notes did not reflect any such testing. Doc. 19-3 at 25. The ALJ found that Plaintiff was capable of performing a range of light work, with the ability to have only occasional contact with others, and he could understand, remember and carry out one- to two-step, simple instructions, but could not drive as part of his job duties. Doc. 19-3 at 28-29. The ALJ concluded that while Plaintiff was unable to perform any of his past relevant work, he is capable of performing other work that exists in significant numbers in the national economy. Doc. 19-3 at 31-33.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors

including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, VE testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing

to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

## III. ARGUMENT AND ANALYSIS

Plaintiff argues that the ALJ did not fully develop the record because he failed to arrange for Plaintiff to have IQ testing to determine whether he met the criteria for Listing 12.05.[3] Doc. 32 at 4-6. Plaintiff supports this contention by asserting that (1) Dr. Sheehan estimated that Plaintiff had below-average intelligence; (2) two state agency reviewing physicians noted Dr. Sheehan's assessment; (3) Plaintiff testified that, while he was not in special education classes in school, his classes "were lower than they were supposed to be," he received tutoring, and he believed he was "passed" because he played on the school basketball team; and (4) while Plaintiff earned a college scholarship for basketball, he had to drop out after his first year because he could not pass the classes. Doc. 32 at 4-5.

Defendant responds that the ALJ relied on substantial evidence in the record to find that Plaintiff is not intellectually disabled, including Plaintiff's mental health records which indicate that he has never been diagnosed with any sort of intellectual disability, borderline intellectual functioning, or any other type of cognitive impairment. Doc. 33 at 5-6. Additionally, Defendant contends, the ALJ accounted for Plaintiff's legitimate mental limitations by restricting him to unskilled, simple work with no driving and only occasional contact with others. Doc. 33 at 6.

---

[3] Listing 12.05 governs "Intellectual Disorder" and sets forth the relevant criteria, including IQ scores, which the claimant must demonstrate to meet the Listing requirement. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Intellectual disorder "is characterized by significantly subaverage general intellectual functioning, significant deficits in current adaptive functioning, and manifestation of the disorder before age 22. Signs may include, but are not limited to, poor conceptual, social, or practical skills evident in your adaptive functioning." *Id.* at § 12.00B(4).

An ALJ owes a duty to a Social Security claimant to develop the record fully and fairly so as to ensure that the ALJ's decision is based on sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (per curiam). That duty must be balanced against the fact that the Plaintiff bears the burden of proof through step four of the sequential evaluation process. *Holifield v. Astrue*, No. 09-31125, 2010 WL 4560524, at *2 (5th Cir. Nov. 10, 2010) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)). An ALJ's decision must be reversed if the ALJ failed to fulfill this duty to develop the record, and the claimant was prejudiced thereby. *Brock*, 84 F.3d at 728; *see also* 20 C.F.R. § 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995) (rejecting claimant's argument that the ALJ erroneously failed to consider his alleged mental impairments and did not order psychological tests because, although the record contained some references to the plaintiff's anxiety, stress, and depression, those comments were isolated and plaintiff was not treated for them).

In this case, the ALJ did not err by failing to further develop the record in regard to Plaintiff's allegation of an intellectual disorder. The duty to develop the record becomes necessary only when the claimant presents sufficient evidence to raise a suspicion concerning an impairment. *See Jones v. Brown*, 829 F.2d 524, 526 (5th Cir. 1987). Plaintiff did not meet that burden here. He presented no evidence that he had ever been diagnosed with an intellectual disability, borderline intellectual functioning, or any other form of cognitive impairment. *See* Doc. 19-3 at 29 (ALJ noting that "no school records reveal special education or academic problems, and no diagnoses for low intellectual functioning were noted" by his mental health provider). The isolated, single reference by Dr. Sheehan that she estimated that Plaintiff was

7

below average in his intellectual functioning was not sufficient to raise a suspicion that Plaintiff was intellectually disabled under Listing 12.05.

Moreover, while the ALJ declined Plaintiff's request to order IQ testing "based on what [he had] so far," she gave Plaintiff's counsel 20 days to update his records. Doc. 19-3 at 66. The ALJ specifically stated that if Plaintiff wanted to prove that he met Listing 12.05, counsel would need to get an IQ test for Plaintiff, and she further suggested that counsel locate Plaintiff's old school or prison records which might contain relevant information on that point. Doc. 19-3 at 66. Plaintiff apparently did not act on this instruction. Moreover, he stated during the administrative hearing that the main thing that kept him from working was that he did not like to be around people because it gave him panic attacks. Doc. 19-3 at 56. He did not mention that his intellectual capacity caused any limitation in his ability to work. Finally, the ALJ accounted for Plaintiff's legitimate mental limitations by restricting him to unskilled, simple work with no driving and only occasional contact with others. Doc. 19-3 at 28-30. No reversible error is present here.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 32, is **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 33, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on February 2, 2018.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE